Our final case of the morning is 22-10669 Juncadello et al. v. Robinhood Financial LLC Mr. Panuccio, is that correct? Yes, thank you. Thank you. You've reserved three minutes for rebuttal. May it please the Court, Jesse Panuccio for appellants. In January of 2021, one of the nation's largest licensed stockbrokers imposed a multi-day, one-sided trading restriction on its clients for the purpose of tanking the price and the value of dozens of stocks those clients had purchased and invested in. Robinhood's CEO admitted the company did this, quote, to protect the firm, even though it knew it was creating a bad outcome for its clients. Robinhood claims that despite its efforts to knowingly harm its clients, those clients have no state law claims for breach of fiduciary duty. I don't know that you have any evidence that they were intending to harm their clients. It sounds more like they were trying to protect themselves. And it reads as though the agreement says they can do that. They may at any time in their sole discretion without prior notice prohibit a restrict ability to trade securities. I don't think, at least from what I've read, this was intended to hurt their customers. I don't think any business intends to hurt its customers. That's how you lose customers. But this was more internal in that we need to protect ourselves and the people we work with. Well, I'll say that comes in two parts, Your Honor. So let me first address the allegations we make about what the intent of these trading restrictions was. And then secondly, let me address the customer agreement. First, in terms of evidence of or allegations about what the company intended, which was to elevate its self-interest above the interest of its clients, which is classic violation of the duty of loyalty, cannot do that under classic statements of fiduciary duty. The one of the key allegations, paragraphs 250 and 251, is that the CEO of Robinhood said we did this to protect the firm, and we knew, we knew we were creating a bad outcome for our clients. Now, they have offered in their briefing below and here excuses for why they do it. And they say, well, we had to meet our regulatory requirements. We weren't going to be able to make deposit requirements. That would hurt anybody. We allege that's not true. We allege that their internal documents say we are too big for them ever to shut us down. We allege that they did meet their deposit requirements and still had a week's worth of trading restrictions. Even if you're right about all of that, though, doesn't the law say that at least the Robinhood financial side of things, that the introducing broker has the ability to limit its duty? You're saying this is a breach of fiduciary duty. But can't they limit their duty by agreement? And that's what they did in paragraph 5F. They said, if things get really bad and we need to protect ourselves, we're going to cut you off on your ability to trade particular securities for whatever amount of time we decide so that we can stay in business. Don't they have the ability? It's not a breach of the duty if by agreement you've allowed them to do so. So with respect to the fiduciary duty claims and the implied contract claims, the contract language they point to, you're correct, Your Honor, is sections 5F and 16, where it says they have discretion to restrict trading. What Robinhood does not want the Court to look at, though, is the entire contract. And, of course, we must look at the contract as a whole. And what does the contract say? First of all, it says in section 1, first or — excuse me, page 1, paragraph 1, in consideration of Robinhood Financial and Securities and their agents opening one or more accounts on my behalf for the purchase, sale, or carrying of securities. They ignore that the purpose of this contract is also to carry those securities. Once a client purchases them, they are carried in that account. They are stuck in the account. The client can't do anything with those securities unless Robinhood executes. Then the contract says in section 4, I understand that my account is self-directed. I appoint, and this is now what is the agency, I appoint Robinhood Financial as my agent for the purpose of carrying out my directions. Robinhood Financial is authorized to take such other steps as are reasonable to carry out my directions. And then also section 11 says that Robinhood will act within the standards set by FINRA and other agencies. And, of course, FINRA standard says that stockbrokers must act in a commercially — with a high standard of commercial honor. That's Rule 2010, FINRA Rule 2010. So reading this as a whole, if you are a customer signing this CLICRAP contract of adhesion, you would say, okay, I'm appointing this agent to carry out my directions. They say they are reserving the right to not trade, to not execute a trade, but I believe they will act reasonably when they do that because the contract says they will act reasonably. And secondly, I have the whole body of common law behind me that says this is my fiduciary. So in what circumstances might that clause have appropriate effect, the clause that your opponents talk about? Great question, Judge Grant, and the answer, and we address this in our reply. If you could imagine a terrorist attack on the nation where the physical infrastructure, say, in New York City of the clearinghouses, of the markets, is so in question that the stockbroker does not believe they can successfully execute the trades that — or perhaps the value is so volatile for their clients that they say, look, I know three minutes ago you gave me a trade order, but two minutes ago there was a terrorist attack, and we're going to pause everything. Couldn't you write that more narrowly, though, if that kind of extreme circumstance is what this is getting at? It seems that this is written more broadly. Well, there are all kinds of circumstances where a stockbroker exercising fiduciary duties — and every case says every stockbroker has fiduciary duties with respect to the scope of agency they undertake. And so if they want to say, well, the scope of our agency is to be a nondiscretionary broker and carry out your trades, but we do reserve discretion to sometimes not execute that, they still have to exercise that discretion in the manner of a fiduciary. If that's not the rule, then there is no action Robinhood couldn't take with respect to its clients' accounts and the billions of dollars of value that are held in those accounts. Robinhood could always privilege its own self-interest, its own desire for profit over that of its clients. And that is simply not what the common law allows fiduciaries to do. There are certain things they couldn't do. My understanding here is they just turned off the faucet. They didn't let you — I forget the exact number of days, but for a certain number of days, you can't make any more purchase or sale orders of these particular stocks. GameStop plus others. For internal reasons, we can't let you trade these until we say you can. Well, the internal reasons were that the value of the stock was going too high and it was causing their deposit requirements and potentially favored investors to be liable for a short squeeze. Which is, again, my initial point. This wasn't done to hurt the investors. It was done to protect themselves because they were having number problems. Well, to elevate their own self-interest over their clients. I would agree with that, too. The purpose of a one-sided, unprecedented PCO, position-closing only, you can sell but you cannot buy. We know that most of the market for these stocks, what we call the suspended securities, was happening on the Robinhood platform. So by limiting the buy side, they knew they were going to tank the price of those stocks. And the purpose of that was so that they wouldn't have to cover higher deposit requirements and spend the money to raise the capital. They privileged their own profit over that of their clients. And that is quintessential violation of fiduciary duty. A stockbroker cannot do that, just like a lawyer could not do that. Let's say that we're looking at California law. And I do have some questions about choice of law. Let me back up in a minute. But in Chen v. Paypal, 61 Calat V, the Court said, where the agreement between an agent and the principal expressly authorizes the agent to engage in certain conduct, the agent's engagement in that conduct cannot constitute a breach of the agent's duty to the principal. Does that point doom your claim if California law is what applies here? No, Judge Grant. And the reason is, again, they want to say the only provision of the contract that matters or provisions are Sections 5F and 16. But we say the whole contract matters. And that means you have to examine Page 1, Paragraph 1, Section 4, Section 5A, and Section 11. And these provisions say, what is the purpose of the agency? The purpose of the agency is to carry out my directions. You will take reasonable steps to do that. You will abide by the FINRA rules, which say you have to act with a standard of commercial honor. And then behind all of that, of course, is the common law, which says stockbrokers will act in the interest of their clients. Do you think it's possible for it? Do you think it would have been possible for Robinhood to contract out of its FINRA commercial honor standard? Is that something that a company could do if it wanted to? I do not believe Robinhood has cited or the district court cited any case that says, for the scope of functions that a stockbroker contracts to undertake, you can eliminate the fiduciary duties. You can limit the functions. So you can say, I am not an investment advisor. I am solely a nondiscretionary broker. We provide the orders. We place the orders. But what you undertake as an agent, you must carry out as a fiduciary. You cannot undertake agency and say, well, I am your agent, but I have no duties. I can do anything I want to you. There's no case that says that. And there's good reason for that, because the common law wants those who are entrusted with the funds of, in this case, novice, inexperienced investors to act with a high standard of commercial honor. And so both the common law and the FINRA rules. And so you're saying that rule doesn't read Section 5F out of the agreement because you could apply it to acts of God and terrorism? Or anything else. You could imagine a case in which the broker says, we're going out of business. Because we're going out of business, we need to wind down trading. Here's two weeks' notice that in two weeks, trading will stop. We will begin restricting trading. Says without prior notice. I mean, your customers have agreed that they can do it immediately. In certain, yes. But you would read that contract in light of two things. One, the rest of the contract that says they will act reasonably and in light of and in accord with the FINRA rules, which say a high standard of commercial honor. There are circumstances, acts of God, terrorist attacks, technological, virus on the exchanges, where they might have to act without notice. But they would need to do so with a high standard of commercial honor, with a duty of loyalty to the client. And our key allegation, our key allegation is that they did not take these actions in the client's best interest. In fact, they knew it was not in the client's interest. They said, we knew what we're doing is a bad outcome for you, but we're doing it anyway. It's as though it's a bad outcome for the customer. In other words, who gets to make the decision when they can invoke the clause? You're giving us examples of times they can. The clause itself says they can do it at any time in their sole discretion without prior notice. So is it just up for the courts to decide whether or not it was a proper timing based on fiduciary rules? Well, it is always true when contracting parties take duties on that they, in the first instance, make a decision about how to act under the contract. But if they act negligently, they might be liable for a negligence claim. If they are a fiduciary and they violate that duty and they made a wrong decision and someone sues, then, yes, it's for a court and a jury to decide whether that has been violated. And — Robinette has argued, I think, that this contract is — that this provision is pretty unbounded. But you all haven't suggested, have you, that a provision like that would be unconscionable or some other kind of nonpossible contract term, right? We don't need to suggest that because, again, we would urge the court to read the contract as a whole. And remember, this was drafted by Robinhood. It's a click-wrap contract, so it needs to be construed against the drafter. Here, there are multiple provisions that say — and you would expect — act in a reasonable of commercial honor, act to carry out my directions. Yes, you have discretion not to do that, but we expect you to exercise that discretion as a fiduciary, not as someone who can simply harm my interest to advance your own. That is not the arm's-length transaction between a client and a stockbroker. That is not what was agreed to. And on choice of law, can you explain why you think Florida has a more significant relationship to your tort claims in California, even though Robinhood Financial and Robinhood Markets have their principal place of business in California? And isn't that where the customers are interfacing for the acts leading up to this lawsuit? My first answer to that question, Judge Grant, is it's undisputed by Robinhood. They have not disputed that the most substantial relationship is Florida. So to the extent that — I mean, that is our contention. That is the law we believe should apply if there's a conflict, although we don't believe there is, with respect to the fiduciary duty and negligence claims. But they have not raised it, and so it would be waived at this point. But there are allegations in the complaint that the CEO of Robinhood Securities was a key player in ultimately deciding that this PCO should be imposed, and that was in Florida. I see I've gone beyond my time.  We'll give you your full time back for rebuttal. Thank you. Good morning, Your Honors. Kevin Orsini on behalf of the Robinhood defendants and appellants. May it please the Court. Judge Mays and Judge Grant, I think you hit the key issue in your questioning to my opponent, which is there is a contract that governs the relationship between Robinhood and its customers, the customers who are the plaintiffs here. And that contract, unambiguously, directly, in two different places, paragraph 5F as well as section 16, gives Robinhood the right to do exactly what it did in January of 2021 in the face of unprecedented market conditions. How much of your argument depends on unprecedented market conditions versus Robinhood had the ability to do whatever it wants? I mean, you wouldn't say I don't think that Robinhood could refuse to execute trades for its Black customers while performing the trades of its customers of other races, right? But if you read this by it, I think if you read this as broadly as you're suggesting, they could, at least under the contractual principles. I think there would be other laws at play, Your Honor, that would prohibit that, that are not an issue here. To directly answer your question, Judge Grant, my argument is not dependent on it being an unprecedented situation. I think the fact that it was an unprecedented situation is a relevant backdrop, including in the arguments about why we did this and we did it to hurt our customers. We didn't do it to hurt our customers. Their own allegations in the complaint establish the market conditions, establish the massive capital calls, and also establish that if we were to get shut down, because that's what happens. You get shut down if you can't meet your collateral obligations. That doesn't just hurt us. It hurts them. And it hurts every other customer, because now nobody can trade on Robinhood for any security, for any purpose. But to your direct question, Your Honor, the fact that it was unprecedented is interesting. But ultimately, I don't think dispositive here, because again, the contract says what it says directly. And my opponent argued, well, you have to look at the entire agreement. And he argued that certain paragraphs require us to act with reasonable, to act reasonably, as well as other provisions which incorporate the FINRA rules, which I'll talk about in a second. But what that is, is an argument that this contract, if they're right, they consistent with the FINRA standards, where's the breach of contract claim? There is none. And the reason there's no breach of contract claim is because they're trying to create liability in tort, through negligence, through fiduciary duty, for conduct that not only doesn't breach the contract, but is explicitly permitted by the contract. And there's extensive law, whichever state's law we want to apply, Florida or unbounded tort liability for conduct that is governed by contracts. And that's normally, in fact, almost uniformly, I believe, in a context where you have two parties to an agreement, something happens, you have a tort claim, and the courts say, your remedy will be based on the economic bargain in the agreement. And those cases involve, at least the ones I've seen, circumstances where the specific conduct is not governed by the contract. And they're trying to imply a duty. Here, the contract says we can do what we did. Now, on the FINRA rule point, since, I'm sorry, Ron. Back up one second. I want to, before we get to that, I'd like to know what you think, if any, the limits are to what that particular provision allows. Are there any limits? I do not believe, as it relates to the facts of this case, Your Honor, there are any limits under fiduciary law or negligence law to that section. Now, if there was other conduct that we undertook, racially motivated conduct, I'm not a discrimination lawyer. What about just arbitrary and capricious conduct? What if Robinhood just wanted to really give its staffers a well-deserved week off, and so they just decided, we're not going to do anything for a week? Could they do that under this contract? I think they could, Your Honor.  And we're accused of trying to create a new rule for big tech, right? But in reality, what the plaintiffs are trying to do is themselves create a different standard for us, because my cell phone's not here because I can't bring it in, but because we're an app on a cell phone, we should be treated differently than the Charles Schwab broker down the street, who you call on the telephone to ask to place an order, or you walk into the branch and ask to place an order. They don't always have to be on, nor do we, Your Honor. Do those contracts typically have similar terms to the one in this contract? So all I know, Your Honor, I haven't reviewed those contracts. What I do know is the SEC suggested the answer is yes. So we cite this in our papers, and the Court below cites this. Shortly after the market events of January 2021 and all the publicity that came with it, the SEC issued a statement that specifically said traders, brokers like my client, didn't mention my client to be clear, but said brokers have the right to stop trading in certain circumstances and went on to say that those rights are typically reflected in the customer agreements. So I don't know how many do have them, how many don't, Your Honor, but the SEC certainly thinks those provisions are generally applicable and generally in existence, and that also relates to the FINRA point, Your Honor, that Ms. Panuccio mentioned. The FINRA rule that he cites is 5310, okay? This was raised for the first time in their reply brief, and this is a FINRA regulatory notice, 21-12, that was issued in March of 2021 that's on FINRA's website, and what FINRA says is member firms are not obligated to receive or accept orders from customers where the firms believe that the associated compliance or legal risks are unacceptable, and there may be situations where firms determine they must change that ordering, their ordering handled procedure to restrict entry or acceptance of orders. But did Robinhood have a compliance or legal interest, or did it have an interest that it didn't have the necessary capital backing for these trades? That's different, right? Your Honor, in this instance, I believe they're one and the same. You have an obligation to satisfy your collateral costs under the regulations and under— So you would characterize that as a legal interest rather than a financial interest or regulatory interest? I think it is a legal interest in which they have a financial interest. So they— If it's in the record, can you say how many customers total that Robinhood had versus how many were trying to trade in GameStop and related stock? It is not in the record, Your Honor. Okay. I know the answer to that from the other pending case, and it's a percentage, but it's not in the record, Your Honor. Because my question is, I think that goes back to one of your earlier points is, is there some point at which a company like Robinhood has to say, we owe a duty to everybody, including the subset versus the whole, and we think for the good of the whole, we're going to have to harm the smaller subset? Which is what I think you're saying here is if we allowed everybody to continue trading in GameStop, we're going to get shut down and nobody can trade. That was the concern based on the facts alleged in the complaint, which, by the way, was filed after extensive discovery that the district court allowed. The district court, prior to motions to dismiss, allowed extensive discovery not only into Robinhood's files, but into the files of 30 other defendants who were originally part of an alleged conspiracy that the court has also dismissed. And that's why they have the internal documents. As to whether or not Robinhood has a duty to do that, Your Honor, again, I don't think it falls under duty. I think the point is Robinhood has the contractual right to make decisions, and it can make decisions like any business does based upon not only what's in its own best interest, but taking into account customers' best interest. To be sure, Robinhood's gotten significant flack, is the word I'll use, for the decisions it made in those market events. But on the point of duty, that's where you have to look at two things I'd submit. You start with the contract, and I think my opponent agrees with that. That's what Your Honor's case that you read earlier, Judge Grant, says in California. This Court's decision in the SFM case says, again, you start with the contract to figure out the scope of the agency, basic agency principles. Our position is not — this relates, I think, Judge Grant, to one of the questions you asked — our position is not that Robinhood has no fiduciary duties. Our position is not that Robinhood can contract out of all fiduciary duties. Our position is the law for decades has made a very clear distinction between discretionary brokers and non-discretionary brokers. And what this Court has said, what Florida courts have said, what California courts have said, all coming back at some level to the Leib decision out of the Eastern District of Michigan that all of these various jurisdictions cite, when you are a non-discretionary broker, which is what we work here, we don't make the decision as to what the right investment strategy is. We don't decide to invest in Coca-Cola versus Pepsi. Right, but what is the fiduciary duty in that context? In the context in which we're in, Your Honor, the non-discretionary — The non-discretionary context. Thank you, Judge. Is, as set forth in the cases, including in the footnote 9 to this Court's decision, the Goshar case, it begins and ends with the execution of the transaction. So when we accept an order and we execute on that order, we have an obligation to do it in the customer's best interest. And there's a lot that falls underneath that, right? And part of it is obtaining the best price. Part of it is doing it at the time that we accept the order and move forward. But the fiduciary duty is to act in the customer's best interest in the transactional sense. And that's what the — that's what the Lieb case says. The Lieb case literally says, which this Court has cited approvingly, that the fiduciary duty begins and ends with the transaction. Now — And where do you find that in the customer agreement? Well, in the customer — what the customer agreement does, Your Honor, is defines whether we are a discretionary or nondiscretionary broker. So if you look, for example, at paragraph 5A of the customer agreement, it makes clear that we don't act with discretion. Then you — we also have, as we've talked about, Your Honor, the ability in multiple places not to accept the trade and not to execute one if we've accepted. The point I'm making now as to what the fiduciary duty actually is, is in the case law. And in the case law, going back decades for brokers that are not big tech brokers. And that case law starts with, what type of animal are you? Are you a nondiscretionary broker or a discretionary broker? We look at the agreement. We look at the conduct, right? Because there are many cases that they rely on where the Court says, well, you're a nondiscretionary broker, except you went too far. You gave investment advice. That's the Ward case, for example. And there are many others. And that then extends and expands upon your fiduciary duties. So you start — The reason I ask that question is because the plaintiffs argue that there are certain provisions in the contract that expand that duty, the use of terms like reasonable. And so I just want your response to those arguments. My response to that, Your Honor, is those don't expand our fiduciary duties. They don't expand the nature of the agency. Again, you start under the SFM case with, what is the scope of the agency? The scope of the agency here with respect to stock transactions is to execute particular transactions we've accepted. The scope of the agency includes the reserved right at any time, for any reason, in our sole discretion, to decide not to accept a trade. Put another way, you have contracted to be a reasonable nondiscretionary broker. That's — I agree with that. Those duties reasonably. Yes. And we didn't need that in the contract. But yes, I agree with that. I don't know. Is it reasonable as a broker to — you know, that would leave you room to just arbitrarily decide — I mean, you said that you could take a week off, right? I don't know that that would be reasonable for me to think of my stock broker as just taking a week off where I would be completely cut out of the market. Well, I think, again, the reasonableness goes to the — to the actual obligations we owe to the customer, right? The only reason, Your Honor, in which it would be unreasonable for us to turn off trading because of a market event, because we want a couple days off, would be if we had an obligation to always be on, right? And that's what their case comes down to. Their case comes down to this idea that once they became Robinhood customers, we had an obligation to always be there to process all transactions for any reason at any time. What about — what about to not make rules that would benefit — would benefit some stockholders and harm other ones? Wouldn't — wouldn't that be reasonable to expect? I think there would be — again, Your Honor, we have the sole discretion to turn off transactions, to not accept a transaction. So the reasonableness mentioned elsewhere in the contract about what we do have an obligation to do, I don't think impacts how we make that decision. I do think there are other areas of law that can govern conduct that is otherwise unlawful. So, for example, we have a pending securities case against Robinhood related to these market events. We, of course, believe that's unfounded, and we're defending it, or discrimination, or various other reasons. There are other doctrines and bodies of law that would limit what we could do if we were truly acting in our own self-interest and hurting others and manipulating the stock market, as is alleged here. But what we're dealing with here are customers who signed a contract and said, you can do this, who are now turning around and suing us, saying, you can't do that. And the law in Florida and California, I'd submit, is very clear that you cannot create tort claims in a contract situation, especially when the tort claim is premised on doing that which you've agreed can be done. And one last thing. Your argument earlier was well taken, that if Robinhood hadn't taken this step, then it would have not only harmed Robinhood, it would have ultimately harmed the customers. Is that an argument that you didn't have a fiduciary duty, or that what you actually did was consistent with your fiduciary duty, whatever it was, to Robinhood's customers? When I made the argument, Your Honor, it was intended as neither. It certainly could be an argument if there is a fiduciary duty that that's what a fiduciary must take into account. And then we get into a complicated question of, well, if my fiduciary duty is to both Judge Mays and Judge Grant, how do I weigh those? The point that I was making, Your Honor, there was simply not that it satisfies a fiduciary duty because we don't believe we had one in making that decision, but simply that the allegations, the argument, the rhetoric that this was done to hurt the customers, that's not true, that this was done purely to benefit Robinhood, that's true insofar as it goes, but ignores the fact that there is also risk here to each of these customers for any other trades and every other customer for other trades. Your argument is we had the legal authority to go either way, but the choice we made was for the greater good, regardless of whether, which legally we could have done either one. You're just saying they're painting us as the bad actor, but if you step back and look at the bigger picture, it was not as bad as it was painted. It's fair. That's fair, Judge Mays. And I see I'm out of time. Thank you. Your Honor, I'm going to try to make five succinct points on my rebuttal. First, Judge Grant asked the question, I believe there was a follow-up, can Robinhood do anything it wants? And my friend from Robinhood, I do not believe you heard an answer to that other than yes, Robinhood can do whatever it wants. Their position, to be clear, is that because they use a contract of adhesion, you know, a click-wrap agreement, they can act not as a fiduciary to their clients. Now, they say, no, no, no, there's these limited fiduciary duties they have that they don't really define. They say, well, it's just the single transaction concept of fiduciary duties. Again, Robinhood is ignoring the contract language. The contract says, purpose of, we're opening accounts for the purchase, sale, or carrying of securities. They want to ignore that they also carry those securities. And their view is they can lock those customers into those securities for as long as they want, no matter what is happening to the value of the account. Again, no fiduciary duties at all. Second point I want to make, my friend mentions the SEC statement. The SEC statement talks of acting for legal, compliance, or risk management reasons. Now, there was a lot of discussion here that that's what they did. But that is a fact question. We say that is not why they did it. We allege there is already evidence, and more has come out in the congressional report since then, that they did not act for those reasons. We know they didn't act for those reasons because they met their depository requirement at 9 a.m. on January 28th, and they still had a week's worth of restrictions. Moreover, we know the regulators didn't believe they act for legal, compliance, or risk reasons because FINRA fined them $70 million, the highest ever fine for the events in this case. So if they were acting for legal, compliance, and regulatory reasons, there would have been no FINRA fine. Third, there was a question, or I should address the entire agreement. Again, we keep stressing read the entire agreement. You did not hear from Robinhood an explanation of those other contract provisions that I mentioned, that you will take such steps as are reasonable, that you will comply with the market standards and the rules. Well, he says he has a different reading of a contract as a whole, and he says when you read the contract as a whole, it allows Robinhood to do what it did. Yeah, Your Honor, respectfully, we disagree with that. I don't think you can say the — if you agree that they must act reasonably, and we heard that, then what is reasonable becomes a question for a jury. Did they act reasonably under the response? Do you agree with his definition that under the case law, they are nondiscretionary and not discretionary? They are nondiscretionary as defined by their customer agreement, because the customer agreement also says — and if you look at the cases, they're somewhat different exactly. These two categories are not concrete. You can take on different duties and contract for them, and that's what it says. And they contracted to carry these securities. If I may have one final point, which I just want to add. This discussion we've had about the contract and the scope of it does relate to the fiduciary duty claims and the implied contract claims. And we do have contract claims. We have implied contract claims. The negligence claims, of course, are outside of these contractual provisions and have a different analysis that isn't affected by these provisions. Thank you, Your Honors. The court is adjourned until 9 a.m. tomorrow morning.